IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 7:25-CR-113-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ERICA MCMILLIAN, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motions to alter her criminal judgment of conviction (DE 37) and for compassionate release from her term of imprisonment (DE 41). In these motions, defendant seeks to avoid her forthcoming custodial term of imprisonment imposed at April 8, 2026, sentencing, because of her serious medical circumstances and concerns that the Federal Bureau of Prisons ("FBOP") cannot meet her medical needs. The government responded in opposition to the motion to alter judgment filed by defendant's appointed counsel. The court did not require government response to the related motion for compassionate release, filed by defendant on a pro se basis, given the issues raised are essentially the same in both motions. In this posture, the motions are ripe for ruling.

**BACKGROUND**

Defendant pleaded guilty to one count of conspiracy to commit wire fraud. At sentencing, defendant moved for downward variance from the sentencing guidelines range, seeking a non-custodial sentence based on her medical circumstances, including "gastroesophageal reflux disease, hypertension, pancreatitis, type II diabetes, kidney cancer . . . [and] multiple surgeries, including a kidney transplant." (See Sent'g Mem. (DE 24) at 3). Defendant also noted her

ongoing treatment for transplant rejection, that she "takes more than twenty-seven medications daily," and that she has regular and essential medical appointments in Pembroke, North Carolina and in South Carolina. (Id. at 3-4).

The court denied defendant's motion and sentenced her to ten months' imprisonment followed by three years' supervised release. At defendant's request, however, the court recommend to the FBOP that "defendant serve her term of imprisonment at the closest federal facility with access to a medical center, in light of defendant's medical condition." (Judgment (DE 35) at 2). The court also allowed defendant 60 days to self-surrender so that she could complete ongoing medical testing. Defendant is scheduled to surrender to Federal Medical Center, Carswell ("FMC Carswell") in Fort Worth, Texas, on June 23, 2026.

By the instant motion to alter judgment, defendant requests that the court vacate the custodial sentence, or convert it to home confinement. In support, defendant relies on correspondence from several medical providers, including Phoenix Locklear, PA-C, her primary care provider (DE 37-1); Moses Y. Aboagye-Kumi, M.D. ("Dr. Aboagye-Kumi"), defendant's nephrologist (DE 37-2); Gail Lowery, FNP, a member of her endocrinology team (DE 37-3); Kathryn Faulkner Roy, FNP, a member of her kidney team (DE 37-4); and Belinda Strickland, FNP ("FNP Strickland"), who defendant retained to provide a medical record review (DE 37-5).

In this motion, defendant describes in detail her serious, ongoing medical circumstances and treatment requirements, including daily medications to prevent the rejection of a transplanted kidney, recurring appointments with specialized medical teams in South Carolina related to her kidney transplant and kidney cancer (in remission prior to sentencing), and the use of a specialized pump to monitor and treat defendant's diabetes. The medical providers who support defendant's

2

request detail the life-threatening consequences of failing to follow the requirements of defendant's treatment plan, defendant's ongoing need for specialized care and follow-up at regular intervals, and the potential risks of placing defendant, who is immuno-compromised, in a prison setting. (See DE 37-1, 37-2, 37-3, 37-4, 37-5). According to defendant, the necessary accommodations "would likely be impossible for the BOP to manage," and "one mistimed dose of her medication can be deadly." (Motion to Alter Judgment (DE 37) at 4).

Approximately two weeks after filing her motion to alter judgment, defendant filed the instant motion for compassionate release. This motion reiterates many of the same medical circumstances described in defendant's motion to alter judgment and includes several pages of medical records, operative notes, and medication lists related to her kidney transplant in 2014. (See Motion for Compassionate Release (DE 41, 41-1, 41-4, 41-5, 41-6, 41-7, 41-8, 41-9, 41-10, 41-11)). In support of her motion for compassionate release, defendant also includes the correspondence from FNP Strickland that was previously attached to her motion to alter judgment. (DE 41-3).

Defendant describes these motions as "a matter of life or death" and requests a modified sentence "in order to preserve [defendant's] life and allow [defendant] to continue receiving the specialized care required to keep [her] alive." (DE 41-1 at 4). For these reasons, defendant requests that the court "allow for a non-incarceration sentence, such as home confinement with the ability to travel" for treatment. (DE 37 at 4).

## COURT'S DISCUSSION

"The law closely guards the finality of criminal sentences against judicial change of heart." U.S. v. Goodwyn, 596 F.3d 233, 235 (4th Cir. 2010) (quotation marks omitted). "A district court

3

may not modify a term of imprisonment once it has been imposed unless . . . the Sentencing Commission amends the applicable Guidelines range, or another statute or Rule 35 expressly permits the court to do so." U.S. v. Goodwyn, 596 F.3d 233, 235 (4th Cir. 2010) (quotation marks omitted).

Rule 35 of the Federal Rules of Criminal Procedure provides that "[w]ithin 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a). This narrow window is jurisdictional. United States v. Shank, 395 F.3d 466, 468 (4th Cir. 2005); see also United States v. Smith, 631 Fed. Appx. 181, 182 (4th Cir. 2016). "Congress limited the reach of Rule 35(a) because it wanted to promote openness and finality in sentencing." United States v. Fields, 552 F.3d 401, 405 (4th Cir. 2009). Here, defendant was sentenced on April 8, 2026. She filed her motion to alter judgment thirty-four days later, on May 12. Therefore, defendant's motion is untimely and this court lacks jurisdiction to consider it. See Shank, 395 F.3d at 468; Smith, 631 Fed. Appx., at 182.

However, 18 U.S.C. § 3582(c)(1)(A)(i), the "compassionate release" provision, provides another statutory vehicle to modify a defendant's sentence.[1] This section becomes operative either upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after: 1) "the defendant has fully exhausted all administrative rights to appeal a failure of the [FBOP] to bring a motion on the defendant's behalf"; or 2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 28 U.S.C. 3582(c)(1)(A).

---

[1] For purposes of this order, the court assumes defendant's motion for compassionate release is not premature even though she has not yet surrendered to FBOP custody. The United States Court of Appeals for the Fourth Circuit has not addressed this issue in a published opinion. However, the court is aware of non-binding authority to the contrary. See United States v. Fower, 30 F.4th 823 (9th Cir. 2022) (holding that a convicted defendant must be incarcerated before seeking compassionate release).

The court may only reduce a defendant's term of imprisonment if it finds "extraordinary and compelling reasons" warrant a sentence reduction, the reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and the factors in 18 U.S.C. § 3553(a) "merit a reduction."  See id. at § 3582(c)(1)(A); United States v. McCoy, 981 F.3d 271, 275–76 (4th Cir. 2020); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021).

The Sentencing Commission's policy statement governing compassionate release recognizes, among other things: 1) "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility"; and 2) medical conditions requiring "long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," as extraordinary and compelling reasons for compassionate release.  See USSG § 1B1.13(b)(1)(B), (C).   As noted above, any requested reduction must also be consistent with the sentencing factors in 18 U.S.C. § 3553(a).   These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant"; [and]

(2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

5

18 U.S.C. § 3553(a). In the context of compassionate release a court must "reconsider[] the § 3553(a) factors in view of the extraordinary and compelling circumstances present." Kibble, 992 F.3d at 332. Additionally, the defendant "bears the burden of showing why the § 3553(a) factors justify a modified sentence." United States v. Centeno-Morales, 90 F.4th 274, 279 (4th Cir. 2024).

At the outset, defendant had not satisfied Section 3582(c)(1)(A)'s exhaustion requirement by the time she filed her motion for compassionate release. According to defendant, she mailed a request for compassionate release to FMC Carswell's warden on May 16, 2026, but it was "returned to sender." (DE 41 at 3). While defendant references including the returned submission as an attachment to her motion, it was not filed with the court. At any rate, even assuming returned mail qualifies as having been received "by the warden of defendant's facility," her motion was filed only 15 days after the request was first mailed. Therefore, she has not fully exhausted all administrative rights to appeal and 30 days have not lapsed from the warden's receipt of the request for compassionate release.

Even so, the exhaustion requirement is not jurisdictional and is subject to waiver if not timely asserted. See United States v. Muhammad, 16 F.4th 126, 129 (4th Cir. 2021). Therefore, the court considers defendant's motion for compassionate release on the merits. Because defendant's motion for compassionate release reiterates many of the same medical circumstances described in her motion to alter judgment, which was filed with the assistance of counsel, and to which the government responded, the court considers defendant's support for both motions in assessing her request for compassionate release.

6

First, the court turns to the "extraordinary and compelling reasons" analysis. Here, defendant primarily relies on four medical circumstances, including her: 1) tightly coordinated pill regimen related to her kidney transplant and other chronic conditions; 2) present travel to South Carolina treatment providers approximately once every quarter for lab work and kidney care; 3) use of an insulin pump controlled by her cell phone to manage her diabetes; and 4) medical guidance to limit exposure to large groups and social environments following the COVID-19 pandemic, as reasons she cannot safely enter FBOP custody. Although Dr. Aboagye-Kumi, defendant's nephrologist states that "incarceration would be medically inappropriate and potentially life-threatening," (DE 37-2), other treatment providers generally focus on the need for reliable access to care, coordination among providers, and medical adherence. (See DE 37-1, 37-3, 37-4). Notably, none of defendant's providers indicate familiarity with the FBOP's healthcare system. (See DE 37-1, 37-2, 37-3, 37-4, 37-5). Neither do any of defendant's providers acknowledge that she will be serving her sentence at a federal medical center, as opposed to a general population correctional institute. (See DE 37-1, 37-2, 37-3, 37-4, 37-5).

While the court acknowledges the distress caused by defendant's 2014 kidney transplant and the ongoing demands of her treatment, there is no evidence that defendant's medical circumstances substantially diminish her ability to provide self-care within the environment of a federal medical center. U.S.S.G. § 1B1.13(b)(1)(B). Additionally, defendant has not shown that her medical circumstances require specialized care "that is not being provided[,] and without which [she] is at risk of serious deterioration in health or death." Id. § 1B1.13(b)(1)(C).

Only two months ago, defendant's demanding medical circumstances were considered and rejected by the court as cause for a non-custodial sentence. Now, before surrendering to FBOP

custody, defendant again raises those circumstances to once more request a non-custodial sentence. Although she suggests that her accommodations "would likely be impossible for the BOP to manage," (DE 37 at 4), that claim is based entirely on speculation by defendant and her current providers, none of whom purport to have any direct experience providing medical care in a correctional setting. (See DE 37-1, 37-2, 37-3, 37-4, 37-5). From the court's prior experience in cases with medically compromised defendants, however, the FBOP routinely provides highly specialized and competent care to inmates. See also FBOP Program Statement 6031.05, Patient Care, available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query (detailing medical services available to inmates, which include organ transplant).

As noted above, at defendant's request during sentencing, the court has recommended, and the FBOP has agreed, that her sentence will be carried out at a federal medical center. The government has described federal medical centers as having "the greatest provision of medical care" available within the FBOP system. (DE 40 at 4). The FBOP is equipped to provide on-site care for chronic conditions and contract local medical facilities for highly specialized treatment as needed. (DE 40 at 4); see also FBOP Program Statement 6031.05, Patient Care. The FBOP also has access to "an extensive list of medications or their equivalents" through its national formulary and the ability to obtain non-formulary medications by request as medically indicated. (DE 40 at 5); FBOP Program Statement 6360.03, Pharmacy Services, available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query.

Defendant is set to serve her ten-month sentence at FMC Carswell, the FBOP's only standalone medical center for female offenders. (DE 41-2). While the court appreciates defendant's apprehension and her genuine need for a high standard of care given her medical

8

circumstances, she has not shown that this federal medical center will be unable to meet her treatment needs. Accordingly, and having considered carefully defendant's grounds for compassionate release, the court finds she has failed to meet the exceptionally demanding standard for such release. See McCoy, 981 F.3d at 288.

Moreover, the § 3553(a) factors do not support reducing defendant's sentence. Defendant was involved in a wire fraud scheme in which she falsely claimed and received $150,000 in fraudulent loans from the United States Small Business Association ("SBA") under the Coronavirus Aid, Relief, and Economic Securities ("CARES") Act during the COVID-19 pandemic. As discussed at sentencing, defendant's husband and young adult sons were also involved in the scheme and defendant's family collectively received approximately $500,000 in fraudulent loans. Due to loan demand outpacing congressional appropriations, legitimate businesses, in turn, were deprived of access to similar relief. Despite the strain on, and subsequent closure of, small businesses across the nation during the COVID-19 pandemic, defendant maintains in her motion for compassionate release that "[t]here was . . . no victim involved in [her] case." (DE 41-1 at 3). Even at this late date, defendant does not appear to have accepted full responsibility for her offense conduct.

Among other considerations discussed at sentencing, the court acknowledged the seriousness of defendant's conduct, the need to deter similar conduct, and the need to protect the public from defendant's harmful conduct. With these considerations in mind, the court declined to impose a non-custodial sentence. In light of defendant's medical circumstances, however, the court did impose a sentence at the low end of the sentencing guidelines—ten months' imprisonment followed by three years' supervised release. Reconsidering those same factors,

9

they continue to weigh against reducing defendant's sentence.  <u>See</u> § 3553(a); <u>see also</u> <u>Kibble</u>, 992 F.3d at 332.  The court further notes that defendant's medical circumstances, while significant, remain unchanged from sentencing two months ago.

<b>CONCLUSION</b>

Based on the foregoing, defendant's motion to alter judgment based on extenuating medical circumstances (DE 37) is DISMISSED without prejudice for lack of jurisdiction.  Defendant's motion for compassionate release (DE 41) is DENIED.  Defendant is DIRECTED to surrender to FBOP custody at the time and place designated by the United States Marshals Service.

SO ORDERED, this the 8th day of June, 2026.

LOUISE W. FLANAGAN<br>
United States District Judge

10