IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:25-CR-113-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ERICA MCMILLIAN,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ORDER |

This matter is before the court on defendant's second motion for compassionate release from her term of imprisonment (DE 45). The government responded in opposition, and defendant replied. In this posture, the motion is ripe for ruling. For the reasons explained below, the court denies defendant's motion.

**BACKGROUND**

Defendant pleaded guilty to one count of conspiracy to commit wire fraud. At sentencing, defendant moved for downward variance from the sentencing guidelines range, seeking a non-custodial sentence based on her medical circumstances, including "gastroesophageal reflux disease, hypertension, pancreatitis, type II diabetes, kidney cancer . . . [and] multiple surgeries, including a kidney transplant." (See Sent'g Mem. (DE 24) at 3). Defendant also noted her ongoing treatment for transplant rejection, that she "takes more than twenty-seven medications daily," and that she has regular and essential medical appointments in Pembroke, North Carolina and in South Carolina. (Id. at 3-4).

The court denied defendant's motion and sentenced her to ten months' imprisonment followed by three years' supervised release. At defendant's request, however, the court

recommend to the Federal Bureau of Prisons ("BOP") that "defendant serve her term of imprisonment at the closest federal facility with access to a medical center, in light of defendant's medical condition." (Judgment (DE 35) at 2).

On May 29, 2026, roughly one month before defendant was scheduled to surrender to federal custody, she moved for compassionate release. In that motion, defendant argued it "would likely be impossible for the BOP to manage" necessary accommodations for her medical conditions. (DE 37 at 4). The court denied defendant's motion, (DE 42), and she surrendered to Federal Medical Center, Carswell ("FMC Carswell") June 23, 2026. Defendant next requested reduction in sentence from FMC Carswell's warden based on her medical circumstances. That request was denied August 4, 2026, because defendant did not meet the criteria for a sentence reduction. (DE 45-1).

Defendant now moves again for compassionate release, arguing that she "has received woefully inadequate medical care," from FMC Carswell, "that places her at risk of permanent harm." (DE 45 at 6).[1] In support, defendant submits "hundreds of pages of BOP medical records" and an expert report from Emil A. Dameff, M.D., who "has reviewed [defendant's] files and determined that the actual care provide by FMC Carswell is not meeting her medical needs." (Id.).

**COURT'S DISCUSSION**

"The law closely guards the finality of criminal sentences against judicial change of heart." United States v. Goodwyn, 596 F.3d 233, 235 (4th Cir. 2010). "A district court may not modify

[1] Unless otherwise specified, internal citations and quotation marks are omitted from case and brief citations, and citations to docket entries reference the page number assigned by the Electronic Case Filing ("ECF") system, not the page number appearing on the face of the document.

a term of imprisonment once it has been imposed unless . . . the Sentencing Commission amends the applicable Guidelines range, or another statute or Rule 35 expressly permits the court to do so." Id.

The "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i), provides one statutory vehicle for modification. Under this provision, the court may only reduce a defendant's term of imprisonment if it finds "extraordinary and compelling reasons" warrant a sentence reduction, the reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and the factors in 18 U.S.C. § 3553(a) "merit a reduction." See id. § 3582(c)(1)(A); United States v. McCoy, 981 F.3d 271, 275–76 (4th Cir. 2020); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021).

The Sentencing Commission's policy statement governing compassionate release recognizes medical conditions requiring "long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," as extraordinary and compelling reasons for compassionate release. See U.S.S.G § 1B1.13(b)(1)(C). Compassionate release may also be appropriate when a defendant demonstrates "any other circumstance or combination of circumstances" that are similar in gravity to those listed circumstances supporting compassionate release under § 1B1.13(b)(1)-(4), which may be considered by themselves or together with those other listed circumstances. See id. § 1B1.13(b)(5). In addition to medical circumstances, other listed circumstances that may provide extraordinary and compelling reasons for compassionate release include a defendant's age, family circumstances, and victimization while in custody. See id. § 1B1.13(b)(1)-(4).

As noted above, any requested reduction must also be consistent with the sentencing factors in 18 U.S.C. § 3553(a). These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). In the context of compassionate release, a court must "reconsider[] the § 3553(a) factors in view of the extraordinary and compelling circumstances present." Kibble, 992 F.3d at 332. Additionally, the defendant "bears the burden of showing why the § 3553(a) factors justify a modified sentence." United States v. Centeno-Morales, 90 F.4th 274, 279 (4th Cir. 2024).

First, the court turns to the "extraordinary and compelling reasons" analysis. Defendant generally asserts five "failures" that purportedly demonstrate she is not receiving "long-term or specialized medical care" without which she is "at risk of serious deterioration in health or death." (DE 45 at 11). These include: 1) not testing defendant's immunosuppressant levels before October 2026, despite defendant receiving abnormal test results in the weeks before her incarceration; 2) analyzing defendant's kidney function without the benefit of her most recent pre-incarceration testing and ordering follow up testing for three months later; 3) failing to maintain a clinical relationship with defendant's pre-incarceration transplant care provider; 4) reducing

defendant's pancreatic enzyme replacement therapy dosage and failing to chart her allergies, even though pre-incarceration records indicate intolerance to four medications; and 5) replacing defendant's insulin pump and continuous glucose monitor with a different insulin therapy without documented review by an endocrinologist. (Id. at 14-15).

The government responds that defendant has not shown necessary long-term or specialized medical care is not being provided. Concerning the first three alleged failures, the government argues that defendant's immunosuppressant levels are being monitored according to the schedule and requirements ordered by defendant's treating nephrologist, who first saw defendant roughly one month after she entered federal custody and requested follow-up three months later. (DE 52 at 12, 15-18). According to the government, defendant's nephrologist "did not ask to re-schedule Defendant once her community records were available" and "did not ask to schedule a return visit sooner than three months." (Id. at 18). In reply, defendant notes that testing sooner and with her community records might not "have produced a particular treatment decision," but would have made the clinical decision-making process better informed. (DE 57 at 7).

Turning to the fourth alleged failure, the government responds that defendant's pancreatic enzyme replacement therapy was "continued immediately" upon her incarceration. (DE 52 at 18). The government also notes that defendant's medical records reflected no allergies because she denied having any allergies on four separate occasions. (Id. at 19). According to the government, defendant's records have since been updated to reflect allergies identified by her pre-incarceration medical records. (Id.). Defendant replies that her medical records still fail to document "intolerances" to two drugs that cause "gastrointestinal reactions." (DE 57 at 9-10).

Finally, as to the fifth purported failure, the government argues that defendant has an endocrinology consultation scheduled for October and that endocrinology review "is not critical to management" of defendant's chronic diabetes. (DE 52 at 13). To that end, the government contends defendant has not shown her diabetes was managed in the community by an endocrinologist. In response, defendant argues her post-incarceration diabetes regime "is not individualized to her." (DE 10).

On this record, defendant has not shown that her medical circumstances require specialized care "that is not being provided[,] and without which [she] is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). As to the first three alleged failures, the record reflects that the specialized care required to treat defendant's kidney transplant is being provided according to the schedule and treatment recommendations made by defendant's treating nephrologist. This treatment began about a month into defendant's federal custody.

Concerning the fourth alleged failure, defendant does not demonstrate how the government has failed to provide care or that she is at risk of serious deterioration in health or death. To the contrary, defendant alleges she continues to receive necessary pancreatic enzyme replacement therapy and does not identify any risks or consequences from her reduced dosage. Defendant further acknowledges that her medical records have been updated to accurately reflect defendant's allergies, except for two medications that purportedly result in gastrointestinal distress. Defendant does not allege that she has received either of these medications during her incarceration, or that unpleasant gastrointestinal symptoms put defendant "at risk of serious deterioration in health or death." See U.S.S.G. § 1B1.13(b)(1)(C). To the extent defendant

believes her medical records do not accurately reflect her known allergies, she should communicate those discrepancies to her medical providers.

Lastly, defendant has not established that the government failed to provide necessary specialized care by replacing defendant's insulin therapy with a different treatment. Defendant acknowledges that she continues to receive insulin therapy, and the government indicates an endocrinology consultation was scheduled for completion in early October. For all these reasons, the court finds defendant's circumstances do not warrant compassionate release under § 1B1.13(b)(1)(C). See McCoy, 981 F.3d at 288.

Alternatively, defendant argues her sentence should be reduced under § 1B1.13(b)(5). In addition to the government's purported failures outlined above, defendant argues compassionate release is appropriate because she is also mobility impaired, lives with chronic pain, and is immuno-compromised. The government responds that these conditions are not so severe to impact defendant's independence or ability to provide selfcare. Concerning defendant's mobility, the government notes that her walker recently required modification to account for her "brisk walking pace." (DE 52 at 16-17). Defendant expressly acknowledges that she is not seeking compassionate release based on the impact her various conditions have on her ability "to provide self-care within the environment of a correctional facility." (DE 57 at 1).

While the court is sympathetic to defendant's chronic pain concerns and immunodeficiencies, defendant fails to show how any of these circumstances "are similar in gravity" to those listed under § 1B1.13(b)(1)-(4), whether considered by themselves or together with those medical circumstances discussed above. Defendant provides no reference for the severity of her chronic pain, beyond a medical record acknowledgement that she suffers from

chronic pain, and defendant's self-evaluation that her pain ranked "eight out of ten" on one occasion. (DE 45 at 23). As to defendant's immunodeficiency, she notes only that "[p]rison confinement in close quarters multiples exposure and complicates isolation and specialty responses." (Id.). Thus, having considered carefully defendant's grounds for compassionate release, the court finds she has failed to meet the exceptionally demanding standard for such release. See McCoy, 981 F.3d at 288.

Moreover, the § 3553(a) factors do not support reducing defendant's sentence. Defendant was involved in a wire fraud scheme in which she falsely claimed and received $150,000 in fraudulent loans from the United States Small Business Association ("SBA") under the Coronavirus Aid, Relief, and Economic Securities ("CARES") Act during the COVID-19 pandemic. As discussed at sentencing, defendant's husband and young adult sons were also involved in the scheme and defendant's family collectively received approximately $500,000 in fraudulent loans. Due to loan demand outpacing congressional appropriations, legitimate businesses, in turn, were deprived of access to similar relief.

Among other considerations discussed at sentencing, the court acknowledged the seriousness of defendant's conduct, the need to deter similar conduct, and the need to protect the public from defendant's harmful conduct. With these considerations in mind, the court declined to impose a non-custodial sentence. Given defendant's medical circumstances, however, the court did impose a sentence at the low end of the sentencing guidelines—ten months' imprisonment followed by three years' supervised release. Defendant is tentatively scheduled to transfer to a residential reentry center in three months. (DE 52 at 6). Having reconsidered the

§ 3353(a) factors, they continue to weigh against reducing defendant's sentence. See § 3553(a); see also Kibble, 992 F.3d at 332.

## CONCLUSION

Based on the foregoing, the court DENIES defendant's second motion for compassionate release (DE 45).

SO ORDERED, this the 19th day of November, 2026.

LOUISE W. FLANAGAN
United States District Judge